932 S.W.2d 35 (1995)
In re M.C., D.C., and C.W., children.
No. 11-94-041-CV.
Court of Appeals of Texas, Eastland.
June 22, 1995.
Publication Ordered March 11, 1996.
Rehearing Overruled July 20, 1995.
*36 Marc McBeath, Law Offices of Harris & McBeath, Abilene, Isaac M. Castro, Jeffrey S. Davis, Castro & Davis, Hamlin, for appellant.
Craig Carter, Texas Department of Protective and Regulatory Services, Austin, for appellee.
Before DICKENSON and WRIGHT, JJ., and McCLOUD, Senior Justice.[*]

OPINION
DICKENSON, Justice.
The Texas Department of Protective and Regulatory Services (TDPRS) filed suit to terminate the parental rights of L.C., a young mother, to three of her four children.[1] Following a jury trial, judgment was rendered on the jury's verdict that the mother's parental rights be terminated, and she appeals. We reverse in part the judgment of the trial court, and we render judgment that the parental rights of L.C. not be terminated. We affirm the trial court's order appointing TDPRS managing conservator of the children.

Background Facts
L.C. was born on August 30, 1972. She was 18 years old on June 24, 1991, when this lawsuit was filed. Her fourth child was born while this suit was pending in the trial court. L.C. testified that she went to the ninth grade in school, but she also testified that she is not able to read and write. Her children and their dates of birth are:
(1) M.C., male, born November 26, 1986 (alleged father is J.W.);
(2) D.C., female, born September 18, 1988 (alleged father is E.M.);
(3) C.W., male, born July 21, 1990 (alleged father is G.L.W.); and
(4) K.D.C., female, born March 16, 1992 (alleged father was not named; termination of parent-child relationship was not sought).

The Jury's Verdict
The jury was instructed on the first three questions that "termination" means that the parent-child relationship between the parent and the child is ended; that "clear and convincing evidence" means the measure or degree of proof that produces in your mind a firm belief or conviction as to the truth of the allegations; and that for the parent-child relationship between L.C. and each of the three children to be terminated:
[I]t must be proven by clear and convincing evidence that at least one of the following events has occurred:
(1) The parent has knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child. or
(2) The parent has engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child.
The jury was instructed that "endanger" means to expose to loss or injury and that "endanger" means more than "the possible ill effects of a less than ideal family environment." The jury was also instructed that in order to terminate the parent-child relationship:
In addition, it must also be proven by clear and convincing evidence that termination of the parent-child relationship would be in the best interest of the child.
The questions submitted to the jury and the jury's answers are shown below:
1. Should the parent-child relationship between [L.C., the mother] and the child [M.C.] be terminated?
Answer: yes

*37 2. Should the parent-child relationship between [L.C., the mother] and the child [D.C.] be terminated?
Answer: yes
3. Should the parent-child relationship between [L.C., the mother] and the child [C.W.] be terminated?
Answer: yes
4. Who should be appointed managing conservator of the child [M.C.]? Texas Department of Protective & Regulatory Services
5. Who should be appointed managing conservator of the child [D.C.]? Texas Department of Protective & Regulatory Services
6. Who should be appointed managing conservator of the child [C.W.]? Texas Department of Protective & Regulatory Services

Points of Error
Appellant has briefed seven points of error. First, she argues that the trial court erred in refusing to grant her motion for mistrial because TDPRS exercised a peremptory challenge to exclude one potential juror on the basis of race. She argues in Points 2 through 5 that there is no evidence and insufficient evidence to support the jury's answers to Questions 1 through 3. Finally, she argues in Points 6 and 7 that the jury's finding that TDPRS, rather than the mother, should be appointed managing conservator of each of the three children was contrary to the overwhelming weight and preponderance of the evidence. We overrule Points 1, 6, and 7. Points 2, 3, and 5 become moot because we sustain Point 4.[2]

Peremptory Challenge to Juror
Before the jury was impanelled, appellant's attorney objected to the peremptory challenge by TDPRS to one of the members of the jury panel. The record shows in pertinent part the following discussion by the attorneys and the trial court judge:
MR. CASTRO: Your Honor, my objection is based on the fact that I don't recall any direct questions that I can recall that the State asked Mr. Munoz to warrant the fact that he was stricken by the State with a preemptory (sic) challenge.... I believe and our contention is, Your Honor, that he was stricken on the basis of race only being hispanic, Mexican-American, and for the record, my name is Isaac Castro and I am a hispanic male and there is no other reason that I can see or that is given or was adduced for striking this particular jury panel member and we object to the array.
* * * * * *
MR. CARTER: Well, I've got two responses as to why I struck this potential juror and they had nothing to do with the man's race. First of all, Cynthia Asbury, when I was talking with her about what her impressions were of the jury, told me that it is her impression that the man was starting to fall asleep when we were doing the voir dire and he seemed disinterested.... Primarily, the reason was that I was told that he looked like very disinterested and looked like he was almost falling asleep while we were doing the voir dire.[3]
* * * * * *
THE COURT: All right, the Court is going to find that Juror No. 2, Moses Munoz, was ... struck for a racially neutral reason for his [lack of] attentiveness *38 and so forth as testified to by these witnesses, that no pattern of racial strikes occurred and therefore, the Batson motion by Mr. Castro will be denied.
The United States Supreme Court held in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), that the prosecutor's use of racially motivated peremptory challenges in a criminal case violates the United States Constitution. The holding in Batson was extended to civil suits in Edmonson v. Leesville Concrete Company, Inc., 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991). Even so, we find that the evidence supports the trial court's ruling that the potential juror was peremptorily challenged for a racially neutral reason. Therefore, Point of Error No. 1 is overruled.

Termination of Parent-Child Relationships
In discussing the involuntary termination of parental rights, the Supreme Court of the United States said in Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972):
The rights to conceive and to raise one's children have been deemed "essential," "basic civil rights of man," and "[r]ights far more precious ... than property rights." "It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the Ninth Amendment. (Citations omitted)
The Supreme Court of Texas held in Wiley v. Spratlan, 543 S.W.2d 349 (Tex.1976), that the "natural right between parents and their children" is a Constitutionally protected right; that termination proceedings "must be strictly scrutinized"; and that termination of the parent-child relationship is "unjustifiable without the most solid and substantial reasons." See also In the Interest of G.M., 596 S.W.2d 846 (Tex.1980), where the Supreme Court of Texas cited earlier Texas cases for the proposition that there is a "strong presumption" in favor of maintaining the parent-child relationship. In the Interest of G.M. also states:
The right to enjoy a natural family unit is no less important than the right to liberty.... Termination is a drastic remedy and is of such weight and gravity that due process requires the state to justify termination of the parent-child relationship by proof more substantial than a preponderance of the evidence. Hereafter, the "clear and convincing evidence" standard of proof will be required in all proceedings for involuntary termination of the parent-child relationship.
See also In re J.J., a Child, 605 S.W.2d 726 (Tex.Civ.App.Eastland 1980), writ ref'd per curiam, 617 S.W.2d 188 (Tex.1981).
Several TDPRS caseworkers testified at the time of trial. TDPRS had a lengthy involvement with L.C. and her children before March 12, 1993, when the amended petition was filed seeking termination of her parent-child relationship with the three older children.
The record is painfully clear that the children were being raised by a young mother who was only a child herself. The caseworkers had been trying to help L.C. develop parenting skills, and some of them said that she had made progress. There was no evidence of cruelty to the children, but the record showed that the family environment was substandard. There was proof of roaches in the house, food on the floor, dirty diapers, and generally unsanitary living conditions. There was no evidence that L.C. "endangered" her children except for the "less than ideal family environment," but there was proof of inadequate care.[4]
During the cross-examination of Cynthia Asbury, one of the caseworkers for L.C. and her children, she was shown the department's "Administrator Review" outline sheet dated September 23, 1992, which contained the conclusion:
Legal does not feel at this time there is sufficient grounds for termination. *39 When appellant's attorney asked Asbury if there was any additional act or omission that had anything to do with the "decision to terminate," she answered:
Just continued instability. No progress from that point on.
During cross-examination by the attorney ad litem for the children, Asbury read from a department form on a plan review dated April of 1993 which showed that the long-range goals for the three older children were "adoption" and that the long-range goal for the youngest child was "return to parent." The caseworker agreed that they have the "same evidence and facts" on all four children.
Viewing the evidence in the light most favorable to the jury's verdict, we find that the evidence is not sufficient to permit the termination of the parent-child relationship between L.C. and her children. Point of Error No. 4 is sustained.

Managing Conservatorship of Children
There is "some evidence" to support the jury's answers to Questions 4, 5, and 6. Appellant did not preserve her complaint that the jury's answers to those conservatorship issues were "contrary to the overwhelming weight and preponderance of the evidence" because she did not file a motion for new trial. See TEX.R.CIV.P. 324(b)(2 and 3). Points of Error Nos. 6 and 7 are overruled.

This Court's Decision
The judgment of the trial court is reversed insofar as it decreed the termination of the parent-child relationship, and this court renders judgment that the petition to terminate (based upon the facts as of the time of trial, December 14, 1993) is denied. The judgment of the trial court is affirmed insofar as it appoints TDPRS managing conservator of the children.
Affirmed in part; reversed in part and rendered.
WRIGHT, J., not participating.
NOTES
[*] McCloud, Chief Justice, Retired, Court of Appeals, Eastland, sitting by assignment pursuant to TEX.GOV'T CODE ANN. § 74.003(b) (Vernon 1988).
[1] The fathers' parental rights were also terminated, but none of them are parties to the appeal. L.C. also has a baby, K.D.C., but TDPRS did not seek termination in this case of her parental rights to the baby; TDPRS has possession of K.D.C. under an order which is not involved in this appeal.
[2] Appellant argues in Point 4 that the trial court erred in refusing to grant her motion for judgment non obstante veredicto because there was "no evidence" that: (a) she knowingly placed or allowed her children to remain in conditions or surroundings which endangered their physical or emotional well-being, (b) she engaged in conduct or placed her children with persons who engaged in conduct which endangered their physical or emotional well-being, or (c) termination of the parent-child relationship was in the best interest of the children.
[3] Mr. Carter's explanation was supported with testimony by Cynthia Asbury, the TDPRS case-worker, that the challenged juror "appeared to be rather disinterested or not attentive ... while you were ... giving your statements." Asbury also testified that she and the lawyer did not have any concern "about the man's racial or ethnic background."
[4] L.C. did not have the children with her when she was shot or when acts of violence occurred.